UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| V. | ) | 5:10-HC-2022-BO |
| | ) | |
| CARLOS OFARRIT-FIGUEROA, | ) | |
| | ) | |
| RESPONDENT. | ) | |
| _____ | ) | |


STATUS CONFERENCE
NOVEMBER 23, 2010
BEFORE THE HONORABLE TERRENCE W. BOYLE
U. S. DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:

MR. NORMAN ACKER
ASST. U.S. ATTORNEY
310 NEW BERN AVE.
RALEIGH, NC


FOR THE RESPONDENT:

MS. SUZANNE LITTLE
ASST. FEDERAL PUBLIC DEFENDER
P.O. BOX 25967
RALEIGH, NC

MR. SCOTT ELLIOT BAYZLE
ATTORNEY AT LAW
P.O. BOX 389
RALEIGH, NC

COURT REPORTER:  DONNA J. TOMAWSKI
STENOTYPE WITH COMPUTER AIDED TRANSCRIPTION

NOVEMBER 23, 2010

**MS. LITTLE:**  GOOD MORNING.  THIS IS MR. BAYZLE.

**MR. BAYZLE:**  I'M SCOTT BAYZLE.  MR. BUTLER IS ALSO HERE AS WELL.

**MS. LITTLE:**  WE WERE DISCUSSING WITH THE INTERPRETER.  I'M NOT SURE IF OUR CLIENT WANTS TO HAVE EVERYTHING INTERPRETED OR JUST IF HE HAS QUESTIONS.

**THE COURT:**  WE'LL SWEAR THE INTERPRETER AND MAKE DO.

(INTERPRETER SWORN.)

MR. ACKER, ON ANOTHER POINT, IN AN APPEAL, WHAT'S THE PROCEDURE IF YOU PREVAIL?  CAN YOU APPEAL FROM A CASE THAT YOU WON, OR IS THAT --

**MR. ACKER:**  I WOULDN'T THINK SO, YOUR HONOR.  I THINK THE OTHER SIDE WOULD APPEAL.

**THE COURT:**  I'M NOT TRYING TO BE CLEVER WITH YOU AT ALL, BUT TO THE EXTENT THAT YOU WON, IN *BRONCHEAU* AND THE STATUTE WAS HELD TO BE CONSTITUTIONAL, AREN'T THERE -- I MEAN, HOW BROAD A PLAYING FIELD DO YOU HAVE TO APPEAL?

(RESPONDENT ENTERS INTO THE COURTROOM.)

IS IT THAT YOU DIDN'T GET THE OUTCOME THAT YOU SPECIFICALLY WANTED BUT YOU GOT A FAVORABLE OUTCOME?

IT'S LIKE THE GUY IN THE SLIP AND FALL CASE WHO WANTED $1 MILLION AND THE JURY GAVE HIM 50,000 AND HE SAID, WHERE'S MY OTHER $950,000?  I'M GOING TO TAKE THIS

```
 1   AS HIGH AS I CAN.  THEY SAID, YOU KNOW, WE'RE SORRY BUT
 2   THE 50 WILL HAVE TO DO.
 3          MR. ACKER:  I WOULD ENVISION, YOUR HONOR, THERE
 4   COULD BE LOTS OF DIFFERENT OUTCOMES IN BRONCHEAU AND WE
 5   JUST HAVE TO SEE ON WHAT BASIS THE 4TH CIRCUIT RULED.  IF
 6   THEY RULED YOUR ORDER WAS INAPPROPRIATE, THEY WOULD
 7   ARTICULATE WHY AND THEN, I WOULD IMAGINE, THEY WOULD
 8   REMAND IT AND WE WOULD BE BACK BEFORE YOUR HONOR TO HANDLE
 9   IT BASED ON THEIR RATIONALE.
10          THE COURT:  WHAT HAPPENS IF IN ONE OF THESE
11   2255'S, LIKE THE GENTLEMAN WHO IS NOT HERE, IF THE JUDGE
12   DOES SOMETHING IN THE CRIMINAL CASE, AND I KNOW THIS IS
13   HYPOTHETICAL AND AN ADVISORY KIND OF QUESTION, BUT SUPPOSE
14   THE JUDGE DOES SOMETHING TO VACATE THE CRIMINAL SENTENCE
15   BUT YOU STILL HAVE THE PERSON NOW CIVILLY.  WOULD YOU KEEP
16   HIM?
17          MR. ACKER:  I THOUGHT ABOUT THAT QUESTION, YOUR
18   HONOR.  I HAVEN'T RESEARCHED THAT QUESTION TO FIND OUR
19   POSITION ON THAT.
20          THE COURT:  YOU COULD HAVE A CLAIM WITHOUT AN
21   ANTECEDENT SENTENCE.
22          MR. ACKER:  WELL, IT'S MY UNDERSTANDING IN THAT
23   CASE THAT THE DEFENDANT IN THAT CASE ARGUED THAT HE WOULD
24   NOT HAVE PLED GUILTY.  SO I PRESUME HIS REMEDY IN THE
25   2255 --
```

1       **THE COURT:** VACATE THE PLEA.

2       **MR. ACKER:** VACATE THE PLEA, AND IT WOULD GO TO

3  TRIAL. THEN WE WOULD GO FROM THERE. BUT THERE ARE A LOT

4  OF UNANSWERED QUESTIONS ON THOSE KIND OF PERMUTATIONS.

5       **THE COURT:** WHAT ABOUT PEOPLE WHO ARE

6  CERTIFIED -- THEY'RE INDICTED AND ARRESTED AND DETAINED

7  AND THEN YOU COME IN FRONT OF ME WITH SOME GROUNDS, EITHER

8  SIDE, AND I SEND THEM TO BUTNER FOR 90 DAYS OR 120 DAYS.

9  ARE THEY IN THE CUSTODY OF THE BUREAU OF PRISONS OR THE

10  ATTORNEY GENERAL?

11       **MR. ACKER:** YES, YOUR HONOR. THE STATUTE

12  SPECIFICALLY SAYS THAT PEOPLE -- WELL, IF THEY HAVE BEEN

13  CERTIFIED.

14       **THE COURT:** COULD THEY BE CERTIFIED OUT OF THAT

15  COMMITMENT? LIKE I COMMIT THEM TO THE BOP FOR SUCH AND

16  SUCH STUDY AND THEN, FOR REASONS THAT WE DON'T KNOW, THE

17  UNDERLYING CASE RESOLVES AND THEY'RE NOT GOING TO BE

18  SENTENCED TO CUSTODY OR PRISON. BUT BECAUSE OF WHO THEY

19  ARE, THEY GET A 4248 CERTIFICATION BEFORE THEY GET OUT.

20  COULD THAT HAPPEN?

21       **MR. ACKER:** YOUR HONOR, I CAN ANSWER THAT IN

22  PART. IF THE COURT HAS MADE A DETERMINATION THAT THEY ARE

23  INCOMPETENT TO STAND TRIAL, BECAUSE UNDER 4241, THEN THE

24  STATUTE DOES ALLOW, IN THAT INSTANCE, FOR THEM TO BE THEN

25  CERTIFIED UNDER 4248.

1          **THE COURT:**  WELL, THEY WOULD BE CERTIFIED FIRST

2    UNDER 4246 PROBABLY, IF THEY WERE INCOMPETENT TO STAND

3    TRIAL.

4          **MR. ACKER:**  OR UNDER 4241, I BELIEVE.  BUT IN

5    THAT INSTANCE THEY COULD BE CERTIFIED, AND THE STATUTE IS

6    VERY SPECIFIC ABOUT THAT.  IF YOU ARE ASKING A DIFFERENT

7    QUESTION, AND THAT IS WHETHER SIMPLY WHEN THEY ARE SENT

8    FOR THE EVALUATION.

9          **THE COURT:**  SUPPOSE THEY ARE NOT FOUND TO BE

10   INCOMPETENT.  SUPPOSE THEY ARE FOUND TO BE COMPETENT

11   VIS-A-VIS UNDERSTANDING THE NATURE AND EXTENT OF THE

12   CHARGES AGAINST THEM AND COMPETENT IN TERMS OF RESPONDING

13   TO CRIMINAL PROCESS AND THE TRIAL BUT SEXUALLY DANGEROUS

14   AND SUFFERING FROM A SERIOUS MENTAL DISORDER.  COULD THEY

15   BE CIVILLY COMMITTED THEN?

16         **MR. ACKER:**  I DON'T KNOW THE ANSWER TO THAT

17   QUESTION, YOUR HONOR.

18         **THE COURT:**  BUT THAT COULD HAPPEN.

19         **MR. ACKER:**  I DON'T KNOW.

20         **THE COURT:**  OR THAT CIRCUMSTANCE COULD.

21         **MR. ACKER:**  CIRCUMSTANCES COULD HAPPEN, ALTHOUGH

22   I WOULD THINK THE NORMAL COURSE WOULD BE IF HE'S COMPETENT

23   TO STAND TRIAL HE WOULD STAND TRIAL, AND EITHER HE WOULD

24   GET A SENTENCE OR NOT GET A SENTENCE.  THAT WOULD BE THE

25   MORE NORMAL COURSE BUT I HAVEN'T RESEARCHED THE ISSUE ON

1   THE SPECIFIC QUESTIONS YOU ASKED.

2           **THE COURT:** THANK YOU.

3      HOW DO YOU PRONOUNCE IT?

4           **MS. LITTLE:** OFARRIT.

5           **THE COURT:** DID MR. OFARRIT'S 2001 CONVICTION

6   COME FROM AN INTERNAL BOP CRIME?

7           **MS. LITTLE:** YES, YOUR HONOR, IT DID.

8           **THE COURT:** SO WHERE WAS HE -- WHERE WAS THE

9   CRIME COMMITTED?

10           **MS. LITTLE:** I'M NOT SURE.

11           **MR. BAYZLE:** YOUR HONOR, IT WAS IN TERRE HAUTE,

12   INDIANA.

13           **THE COURT:** AT THAT PENITENTIARY.

14           **MR. BAYZLE:** HE WAS BEING HELD FOR IMMIGRATION

15   REASONS AT THAT TIME.

16           **THE COURT:** HE WAS HELD THERE ON IMMIGRATION AT

17   THE TERRE HAUTE PRISON. I DON'T KNOW THE PRONUNCIATION

18   BUT I KNOW IT'S A MAJOR PRISON.

19           **MR. BAYZLE:** YES, YOUR HONOR.

20           **THE COURT:** HE COMMITTED A PREDATORY CRIME

21   THERE, WHICH HE EITHER PLED GUILTY TO OR WAS CONVICTED OF,

22   RIGHT?

23           **MS. LITTLE:** HE WENT TO TRIAL, YOUR HONOR.

24           **THE COURT:** AND HE WAS CONVICTED OF THAT.

25           **MS. LITTLE:** HE WAS CONVICTED.

1          **THE COURT:**  AND SENTENCED TO 120-MONTHS AND

2    THREE YEARS OF SUPERVISED RELEASE.

3          **MS. LITTLE:**  THAT'S CORRECT.

4          **THE COURT:**  AND SO WHEN -- HE WAS DUE TO BE

5    RELEASED FROM HIS SENTENCE ON FEBRUARY 16 AND WAS

6    CERTIFIED SHORTLY BEFORE THAT?

7          **MS. LITTLE:**  THAT'S CORRECT.  HE WAS CERTIFIED

8    ON FEBRUARY 12 OF 2010.

9          **THE COURT:**  DID HE HAVE AN IMMIGRATION DETAINER

10   AGAINST HIM?

11         **MS. LITTLE:**  YES, HE DOES.

12         **THE COURT:**  TO WHAT COUNTRY?

13         **MS. LITTLE:**  HE CAME OVER ON PART OF THE MARIEL

14   BOATLIFT.

15         **THE COURT:**  TO CUBA?

16         **MS. LITTLE:**  YES, WHICH WE DON'T DEPORT PEOPLE

17   TO CUBA.

18         **THE COURT:**  SO HE HAS AN ASYLUM STATUS?

19         **MS. LITTLE:**  I DON'T KNOW ABOUT THE ASYLUM

20   STATUS.  WE SPOKE WITH IMMIGRATION.  THEY INDICATED WHEN

21   HE IS RELEASED HE WILL GO INTO ICE CUSTODY AND HE WILL BE

22   HELD THERE UNTIL THERE'S A DETERMINATION MADE AS TO --

23         **THE COURT:**  BECAUSE HE'S NOT GOING TO BE

24   TRANSITIONED INTO THE AMERICAN POPULATION.

25         **MS. LITTLE:**  HE COULD BE.  ICE ACTUALLY HAS

1  PEOPLE THAT SUPERVISE INDIVIDUALS FOR LIFE, AND HE WOULD

2  BE SUBJECT TO LIFETIME SUPERVISION TO AN ICE AGENT IF HE'S

3  RELEASED.

4       THEY HAVE TO MAKE A DETERMINATION, THEIR OWN

5  INDEPENDENT DETERMINATION AS TO WHETHER HE'S DANGEROUS.

6  IF HE'S CONSIDERED DANGEROUS, THEN THEY CAN HOLD HIM

7  APPARENTLY INDEFINITELY, AND THEY ACTUALLY HAVE SOME OF

8  THESE PEOPLE THEY ARE HOLDING CURRENTLY IN FLORIDA.

9       APPARENTLY THERE'S A SPLIT IN THE CIRCUITS RIGHT NOW

10  BETWEEN I BELIEVE THE FIFTH AND TENTH CIRCUIT AS TO

11  WHETHER ICE CAN HOLD PEOPLE INDEFINITELY.  THAT'S NOT BEEN

12  RESOLVED YET.  BUT IF HE'S RELEASED, HE WOULD BE UNDER THE

13  SUPERVISION OF ICE.

14            **THE COURT:**  HOW DO YOU PRONOUNCE IT, MARIANA

15  BOAT?

16            **MS. LITTLE:**  IT'S THE MARIEL BOATLIFT.

17            **THE COURT:**  THAT HAPPENED IN THE LATE '80S?

18            **MS. LITTLE:**  THAT'S CORRECT.

19            **MR. BAYZLE:**  1980.

20            **THE COURT:**  SO 30 YEARS AGO?

21            **MS. LITTLE:**  RIGHT.  1980, HE WAS SENT TO A

22  REFUGEE CAMP IN WISCONSIN INITIALLY.

23            **THE COURT:**  WHAT HAVE YOU FILED WITH RESPECT TO

24  HIS 4248 CASE?

25            **MS. LITTLE:**  WE FILED THE ORIGINAL MOTION TO

DISMISS ON JULY 19 OF THIS, 2010, AND WE INTEND TO FILE A

SUPPLEMENTAL MOTION ALONG THE LINES OF THE *BRONCHEAU*

DECISION IN HIS CASE AS WELL.

**THE COURT:** AND MR. BAYZLE, YOU ARE REPRESENTING

HIM IN THE 2241?

**MR. BAYZLE:** YES, YOUR HONOR. THERE'S TWO

PENDING MATTERS IN THE 2241. THE GOVERNMENT FILED A

MOTION TO DISMISS THE HABEAS PETITION ON JUNE 15, WHICH WE

FILED FORMAL OPPOSITION TO THAT. THE GOVERNMENT

SUBSEQUENTLY REQUESTED A STAY OF THAT, WHICH WE OPPOSED

AND THEN FILED A FORMAL OPPOSITION TO THE GOVERNMENT'S

MOTION TO STAY ANY PROCEEDINGS ON THE HABEAS PETITION. SO

THOSE ARE THE TWO PENDING MOTIONS RIGHT NOW ON THE HABEAS

MATTER.

**THE COURT:** WHAT IS YOUR CLAIM IN THE HABEAS,

DOES IT TRACK THE *TIMMS* OPINION?

**MR. BAYZLE:** YES, YOUR HONOR, IT TRACKS THE

*TIMMS* BASED ON A VARIETY OF REASONS FOR BOTH DUE PROCESS,

EQUAL PROTECTION, AND REALLY TRACKS ALL THE REASONS SET

OUT IN *TIMMS*.

YOUR HONOR, THE GOVERNMENT'S MOTION TO DISMISS IS

REALLY JUST BASED ON TWO ARGUMENTS. ONE, IS THAT THEY

ARGUE THAT IN THE LIGHT OF *COMSTOCK*, THE CONTINUED

COMMITMENT IS CONSTITUTIONAL. AND THEN ALSO ARGUE THAT

MR. FIGUEROA NEEDS TO SEEK HIS REMEDY IN THE 4248 AND NOT

1    IN THE HABEAS PETITION.

2           **THE COURT:**  THEY ARE ARGUING THE LATER DEVELOPED

3    EXHAUSTION ARGUMENT, OR MAYBE IT'S NOT LATER DEVELOPED,

4    BUT THE EXHAUSTION ARGUMENT?

5           **MR. BAYZLE:**  I THINK THERE ARE REMEDIES

6    AVAILABLE WITHIN 4248 --

7           **THE COURT:**  THAT FORECLOSE HABEAS?  WHAT DO YOU

8    THINK OF THAT?  THAT WAS ONE OF THE SALIENT ISSUES THAT

9    WAS RAISED IN SEPTEMBER IN THE APPELLATE COURT DURING ORAL

10   ARGUMENT, AND THE APPELLATE COURT HAS NOT YET HANDED DOWN

11   A DECISION IN *COMSTOCK* AND *TIMMS*.

12       IN *TIMMS*, THEY WENT STRAIGHT AT WHETHER THEY OUGHT TO

13   DEFER ANY RULING UNTIL, OR AT LEAST THAT'S MY

14   UNDERSTANDING OF IT, UNTIL EXHAUSTION OCCURRED.

15   EXHAUSTION MEANING THAT YOU HAVE THE COLLATERAL PROCESS

16   INVOLVED IN 4248 AND YOU NEED TO HAVE THAT RUN ITS COURSE

17   BEFORE YOU CAN FILE A 2241.

18       SOME WOULD SAY THAT'S A FAIRLY SHOCKING APPLICATION

19   OF HABEAS CORPUS, BUT I'D LIKE TO HEAR WHAT YOU WOULD SAY

20   ABOUT IT.

21          **MR. BAYZLE:**  YOUR HONOR, AS THIS COURT HELD IN

22   *TIMMS* AT THE TRIAL LEVEL, 4248 DOES NOT PROVIDE ADEQUATE

23   PROCEDURES.

24          **THE COURT:**  BUT YOU CAN'T CITE THAT TO ME HERE.

25          **MR. BAYZLE:**  ABSOLUTELY, YOUR HONOR.  I THINK IN

THIS ONE, IT IS DIFFICULT TO ARGUE THAT IF 4248 IN THE

PROCEDURES THAT IT PROVIDES IS UNCONSTITUTIONAL AND

VIOLATES THE DUE PROCESS LAWS, IT'S A HARD ARGUMENT THEN

TO ARGUE THAT YOU HAVE TO UTILIZE THOSE INSUFFICIENT

PROCEDURES IN THE FIRST PLACE.  I MEAN, IT HAS BEEN NINE

MONTHS SINCE CARLOS' RELEASE DATE AND I THINK DUE PROCESS,

AT A MINIMUM, REQUIRES AT LEAST AN INITIAL DETERMINATION

OF PROBABLE CAUSE FOR EVEN JUST CONTINUED DETAINMENT

FOLLOWED BY A VERY PROMPT HEARING ON THE ISSUE OF WHETHER

OR NOT HE WOULD BE SEXUALLY DANGEROUS UNDER THE STATUTE,

EVEN ASSUMING THE STATUTE ON ITS FACE WAS CONSTITUTIONAL.

AND THAT'S WHAT MAKES THE HABEAS PETITION NECESSARY HERE,

IS THAT THOSE PROCEDURES THAT ARE PURPORTEDLY PROVIDED IN

4248 ARE INSUFFICIENT TO PROVIDE HIM WITH THE

CONSTITUTIONAL PROTECTIONS.

**THE COURT:**  WELL, BUT YOU NEED TO DEAL WITH THAT

BECAUSE I THINK THERE'S A VERY REAL CHANCE THAT THE

APPELLATE COURT IS GOING TO SAY WELL, IRRESPECTIVE OF THE

PROTECTIONS IN 4248, THAT'S WHAT YOU NEED TO DO AND YOU

CAN'T HAVE HABEAS CORPUS.  THAT CUTS THE HEART OUT OF

HABEAS CORPUS, IT WOULD SEEM.

NOW, THERE ARE -- TO WHAT EXTENT DO PRISONERS IN

FEDERAL PRISONS WHO BRING HABEAS PETITIONS HAVE TO GO

THROUGH INTERNAL ADMINISTRATIVE PROCEDURES, GRIEVANCE

PROCEDURES, BEFORE THEY CAN MAKE VALID 2241 OR 2255

1  CLAIMS?

2      **MR. BAYZLE:**  YOUR HONOR, I'M NOT AWARE OF

3  INTERNAL PROCEDURES THAT THEY MUST DO IN ORDER TO FILE A

4  HABEAS PETITION.  BUT AGAIN, I WILL ADMIT THIS IS NOT

5  SOMETHING THAT I HAVE A LOT OF EXPERIENCE IN THE LAW IN

6  THAT REGARD.

7      **THE COURT:**  OKAY.  I THINK THAT'S AN ANALOGOUS

8  SITUATION THAT YOU MIGHT WANT TO LOOK AT BECAUSE, YOU

9  KNOW, A BIG AREA OF EXHAUSTION IN HABEAS IS TAKEN UP BY

10  THE COMITY BETWEEN FEDERAL AND STATE COURTS, BUT THAT'S

11  NOT INVOLVED HERE.  TO THE EXTENT THAT GETS COMMINGLED IN

12  THE THINKING, THAT'S A MISTAKE.  THERE'S NO DUAL

13  SOVEREIGNS, THERE'S NO FEDERALISM OR COMITY INVOLVED HERE

14  AT ALL.  IT WOULD ONLY BE WHETHER HIERARCHICALLY AN

15  ADMINISTRATIVE PROCEDURE OR SOME OTHER SET OF RULES CAN

16  PRECLUDE YOUR RIGHT TO EXAMINE YOUR DETENTION OR CUSTODY

17  WITH HABEAS, AS I SEE IT.

18      **MR. BAYZLE:**  I'LL JUST SAY, IN THIS CASE IT IS

19  THE ABILITY TO OBVIOUSLY DETAIN SOMEONE AND KEEP THEM IN

20  DETENTION FOR NOW NINE MONTHS PAST THE RELEASE DATE

21  WITHOUT ANY HEARING WHATSOEVER OR ANY INITIAL

22  DETERMINATION.  IT MAKES IT VERY DIFFICULT TO CHALLENGE

23  THE CONSTITUTIONALITY OF THE STATUTE WHEN THERE ARE NO

24  HEARINGS PROVIDED AT THE ONSET TO EVEN INITIATE THOSE

25  CHALLENGE.

1    SO THAT PROCESS OF HAVING TO GO THROUGH 4248 ASSUMES

2  THAT SOMEONE HAS TO BASICALLY GIVE UP THEIR LIBERTY

3  INTERESTS FOR A GOOD LONG TIME BEFORE THEY ARE EVEN

4  ALLOWED TO HAVE ANY TYPE OF FORUM TO EVEN CHALLENGE THE

5  CONSTITUTIONALITY OF THE DETENTION.

6    **THE COURT:** I'M JUST GIVING YOU A WORD TO THE

7  WISE, THERE'S A SERIOUS CHANCE THAT THE APPELLATE COURTS

8  WILL COLLAPSE HABEAS CORPUS INTO 4248, EITHER

9  INTENTIONALLY OR UNINTENTIONALLY, IF THEY COME UP WITH AN

10  EXHAUSTION PREREQUISITE.

11    ANYWAY, DO YOU KNOW, AND YOU PROBABLY DO, WHAT THE

12  EXHAUSTION REQUIREMENTS ARE IN EITHER 2255 OR 2241,

13  PROBABLY IN 2241. IF YOU ARE IN THE BOP AND YOU MAKE A

14  CLAIM, CONDITIONS OF CONFINEMENT OR SOMETHING LIKE THAT,

15  DO YOU HAVE TO GO THROUGH AN ADMINISTRATIVE PROCESS?

16    **MR. ACKER:** I BELIEVE SO, YOUR HONOR. I THINK

17  THE COURTS HAVE, UNDER SOME CIRCUMSTANCES, EXCUSED PEOPLE

18  BASED ON THE ISSUE OF FUTILITY OR THE DETERMINATION THAT

19  IT WOULD HAVE BEEN FUTILE. BUT OTHER THAN THAT, I BELIEVE

20  IN A NORMAL CRIMINAL MATTER WHERE SOMEBODY IS CHALLENGING

21  THEIR -- IN THE CUSTODY OF THE ATTORNEY GENERAL IN A

22  CRIMINAL SENTENCE AND THEY ARE CHALLENGING CONDITIONS OF

23  CONFINEMENT, THEY NORMALLY DO HAVE TO EXHAUST THEIR

24  ADMINISTRATIVE REMEDIES PRIOR TO FILING A HABEAS.

25    **THE COURT:** THAT MAY BE A GOOD ANSWER FOR YOU.

1    I DON'T KNOW THAT IT WAS MADE TO THE APPELLATE COURT, BUT

2    THAT THE DOMAIN THAT EXHAUSTION APPLIES IS IN THE CRIMINAL

3    DOMAIN.

4              **MR. BAYZLE:**  YES, SIR.

5              **THE COURT:**  NOT IN THE CIVIL DOMAIN.  BECAUSE NO

6    ONE HAS HERETOFORE SAID THAT 4248 PEOPLE WHO ARE IN CIVIL

7    CUSTODY, IF THEY HAVE A GRIEVANCE ABOUT THE CONDITIONS OF

8    CONFINEMENT AS SUCH, THAT THEY WOULD HAVE TO EXHAUST, HAVE

9    THEY?  IF THEY DON'T LIKE THE FOOD AT MARYLAND, IF THEY

10   DON'T LIKE ONE OF THE DETAILS OF LIFE AT MARYLAND.

11             **MR. ACKER:**  I DON'T BELIEVE THAT'S COME UP.

12             **THE COURT:**  THEY'RE TOO FOCUSED ON GETTING OUT

13   AND NOT ON STAYING IN AND MAKING IT A BETTER PLACE, SO

14   FAR.

15             **MR. ACKER:**  THAT'S GENERALLY TRUE, I BELIEVE.

16             **THE COURT:**  OKAY.  SO YOU ARE LOOKING FOR A

17   RULING ON YOUR 2241?

18             **MR. BAYZLE:**  YES, YOUR HONOR.  THERE'S THAT

19   MATTER AND THEN THE OTHER PENDING ISSUE WOULD BE THE

20   GOVERNMENT'S MOTION TO STAY, WHICH WE HAVE ALSO FILED A

21   MOTION IN OPPOSITION.  MOTION TO STAY SEEMS TO BE BASED ON

22   UNTIL THE 4TH CIRCUIT RULES.  IT WOULD REDUCE THE NEEDLESS

23   EXPENDITURE OF RESOURCES TO GO ON WITH A HABEAS PETITION.

24        WE OBVIOUSLY DISAGREE WITH THAT AND JUST THINK THAT

25   THAT ARGUMENT IGNORES THE FAR GREATER COST THAT

1   MR. OFARRIT HAS BEEN PAYING AND WILL CONTINUE TO PAY IN

2   DETENTION.

3           **THE COURT:**  THANK YOU.  YOU HAVE BRIEFED THAT?

4           **MR. ACKER:**  YES, YOUR HONOR.

5           **THE COURT:**  IF I DON'T STAY IT, ARE YOU

6   SATISFIED WITH YOUR BRIEFING ON THE 2241?

7           **MR. ACKER:**  YES, YOUR HONOR.

8           **THE COURT:**  OKAY.  THANK YOU.  MS. LITTLE, DO

9   YOU HAVE ANYTHING YOU WANT TO ADD?

10          **MS. LITTLE:**  NO, YOUR HONOR, EXCEPT WE WILL BE

11  FILING THAT SUPPLEMENTAL MOTION NEXT WEEK.

12          **THE COURT:**  OKAY.

13          **MR. ACKER:**  IF THEY FILE A SUPPLEMENTAL MOTION,

14  WE WOULD LIKE THE OPPORTUNITY TO RESPOND TO THAT.

15          **THE COURT:**  THIS IS A SUPPLEMENTAL MOTION TO

16  JOIN IN THE *BRONCHEAU* CASES?

17          **MS. LITTLE:**  THAT'S CORRECT.

18          **MR. ACKER:**  AND WE'LL DO THAT QUICKLY.

19          **THE COURT:**  ALL RIGHT.  WE'LL GIVE YOU FIVE DAYS

20  AND FIVE DAYS TO DO THAT.  IT'S NOT VERY INVOLVED, YOU

21  JUST HAVE TO PARROT WHAT WAS IN THE OTHER CASES.

22          **MS. LITTLE:**  RIGHT.

23          **MR. ACKER:**  THE ONLY THING I WOULD SAY, YOUR

24  HONOR, IS THAT I THINK THE RULES ARE TRYING TO GO TO

25  CALENDAR DAYS INSTEAD OF BUSINESS DAYS.  I REQUEST IT BE

1   SEVEN CALENDAR DAYS RATHER THAN FIVE BUSINESS DAYS.

2           **THE COURT:**  I'LL DO THAT, SEVEN CALENDAR DAYS.

3           **MR. ACKER:**  THANK YOU.

4           **THE COURT:**  THANK YOU FOR APPEARING AND FOR

5   REPRESENTING HIM.

20                      END OF TRANSCRIPT

```
 1                        CERTIFICATE

 2       THIS IS TO CERTIFY THAT THE FOREGOING TRANSCRIPT OF

 3   PROCEEDINGS TAKEN AT THE CIVIL SESSION OF UNITED STATES

 4   DISTRICT COURT IS A TRUE AND ACCURATE TRANSCRIPTION OF THE

 5   PROCEEDINGS TAKEN BY ME IN MACHINE SHORTHAND AND

 6   TRANSCRIBED BY COMPUTER UNDER MY SUPERVISION.

 7       THIS THE 15TH DAY OF JANUARY, 2011.

 8

 9                         /S/ DONNA J. TOMAWSKI

10                         DONNA J. TOMAWSKI
                           OFFICIAL COURT REPORTER
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```